**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PUENTE ARIZONA; SUSAN E.
FREDERICK-GRAY; SARA
CERVANTES ARREOLA, on behalf of
themselves and all others similarly
situated,

        *Plaintiffs-Appellees,*

v.

JOSEPH M. ARPAIO, Sheriff of
Maricopa County, Arizona, in his
official capacity,

        *Defendant-Appellant,*

and

BILL MONTGOMERY, Maricopa
County Attorney, in his official
capacity; COUNTY OF MARICOPA,
State of Arizona; STATE OF
ARIZONA,

        *Defendants.*

No. 15-15211

D.C. No.
2:14-cv-01356-
DGC

PUENTE ARIZONA; SUSAN E.
FREDERICK-GRAY; SARA
CERVANTES ARREOLA, on behalf of
themselves and all others similarly
situated,

*Plaintiffs-Appellees,*

v.

JOSEPH M. ARPAIO, Sheriff of
Maricopa County, Arizona, in his
official capacity; BILL
MONTGOMERY, Maricopa County
Attorney, in his official capacity;
COUNTY OF MARICOPA, State of
Arizona,

*Defendants,*

and

STATE OF ARIZONA,

*Defendant-Appellant.*

No. 15-15213

D.C. No.
2:14-cv-01356-
DGC

PUENTE ARIZONA; SUSAN E. FREDERICK-GRAY; SARA CERVANTES ARREOLA, on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellees,*

v.

BILL MONTGOMERY, Maricopa County Attorney, in his official capacity; COUNTY OF MARICOPA, State of Arizona,

*Defendants-Appellants,*

and

JOSEPH M. ARPAIO, Sheriff of Maricopa County, Arizona, in his official capacity; STATE OF ARIZONA,

*Defendants.*

No. 15-15215

D.C. No. 2:14-cv-01356-DGC

OPINION

Appeal from the United States District Court
for the District of Arizona
David G. Campbell, District Judge, Presiding

Argued and Submitted
February 12, 2016—San Francisco, California

Filed May 2, 2016

Before: Barry G. Silverman and Richard C. Tallman, Circuit Judges, and Robert S. Lasnik,[*] Senior District Judge.

Opinion by Judge Tallman

## SUMMARY[**]

### Civil Rights

The panel vacated the district court's preliminary injunction, reversed the district court's finding regarding the merits of plaintiffs' facial preemption claim, dismissed an appeal by Maricopa County, and remanded, in an action challenging provisions of Arizona's identity theft laws, which prohibit using a false identity to obtain employment.

The panel first rejected plaintiffs' assertion that Arizona's employment-related identity theft laws were facially preempted by the federal Immigration Reform and Control Act. The panel determined that although some applications of the identity theft laws may come into conflict with the Immigration Reform and Control Act's comprehensive scheme or with the federal government's exclusive discretion over immigration-related prosecutions, when the laws are applied to U.S. citizens or lawful permanent residents those

[*] The Honorable Robert S. Lasnik, Senior United States District Judge for the Western District of Washington, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

concerns are not implicated. Holding that Arizona's employment-related identity theft laws were not preempted in all applications, the panel vacated the district court's preliminary injunction and reversed the district court's finding that plaintiffs' facial preemption challenge was likely to succeed on the merits. The panel remanded with instructions to evaluate the merits of plaintiffs' remaining claims, including the as-applied preemption challenge.

The panel dismissed Maricopa County's appeal from the district court's denial of the County's motion to dismiss pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The panel held that the County's appeal did not fall within one of the narrow categories where invoking pendent jurisdiction would be proper.

**COUNSEL**

Dominic Draye (argued), John R. Lopez, IV, Office of the Attorney General, Phoenix, Arizona, for Defendant-Appellant State of Arizona.

Douglas L. Irish, Thomas P. Liddy, J. Kenneth Mangum, Ann Thompson Uglietta, Maricopa County Attorney's Office; Phoenix, Arizona, for Defendant-Appellant William Montgomery.

Michele Marie Iafrate, Iafrate & Associates, Phoenix, Arizona, for Defendant-Appellant Joseph M. Arpaio.

Jessica Vosburgh (argued) National Day Laborer Organizing Network, Hoover, Alabama; Cindy Pánuco (argued), Joshua Piovia-Scott, and Dan Stormer, Hadsell Stormer & Renick

LLC, Pasadena, California; Anne Lai, University of California, Irvine School of Law—Immigrant Rights Clinic, Irvine, California; Daniel J. Pochoda, ACLU Foundation of Arizona, Phoenix, Arizona; Jessica Karp Bansal, National Day Laborer Organizing Network, Los Angeles, California; Ray A. Ybarra Maldonado, Law Office of Ray A. Ybarra Maldonado, PLC, Phoenix, Arizona, for Plaintiffs-Appellees.

Victor Stone, Russell P. Butler, Maryland Crime Victims' Resource Center Inc., Upper Marlboro, Maryland; Steve Twist, Arizona Voice for Crime Victims, Inc., Scottsdale, Arizona, for Amici Curiae Arizona Voice for Crime Victims, Inc., National Identity Theft Victim Assistance Network, Inc., and Maryland Crime Victims Resource Center Inc.

William L. Thorpe, Spencer G. Scharff, Thorpe Shwer, P.C., Phoenix, Arizona, for Amici Curiae Professors Doris Marie Provine and Cecilia Menjívar.

Joshua T. Stehlik, Nicholas Espíritu, National Immigration Law Center, Los Angeles, California, for Amici Curiae National Immigration Law Center, et al.

Benjamin C. Mizer, Principal Deputy Assistant Attorney General, John S. Leonardo, United States Attorney, Beth S. Brinkmann, Deputy Assistant Attorney General, Mark B. Stern, Lindsey Powell, Jeffrey E. Sandberg, William E. Havemann, Attorneys, Appellate Staff, Civil Division, United States Department of Justice, Washington, D.C., for Amicus Curiae United States of America.

**OPINION**

TALLMAN, Circuit Judge:

An immigrant advocacy organization, Puente Arizona, along with individual unauthorized aliens[1] and taxpayers of Maricopa County (collectively "Puente"), challenge provisions of Arizona's identity theft laws which prohibit using a false identity to obtain employment. The district court found the laws facially preempted by federal immigration policy and granted a preliminary injunction preventing the Arizona government defendants (collectively "Arizona") from enforcing the challenged provisions. Arizona appeals that preliminary injunction, and defendant Maricopa County individually appeals its liability under 42 U.S.C. § 1983 based on *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Because we find that the challenged laws are not preempted in all applications, we reverse the district court's holding that the laws are likely facially preempted and we vacate the district court's preliminary injunction. We also dismiss Maricopa County's *Monell* appeal for lack of jurisdiction. We remand for consideration of the as-applied challenge to the statutes.

I

This case began when Arizona amended its identity theft laws to reach the growing problem of employment-related identity theft within the state. Arizona passed H.B. 2779 in

---

[1] We use the term "unauthorized alien" throughout this opinion to refer to "aliens who have entered or are present in the United States in violation of federal immigration law." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1012 n.1 (9th Cir. 2013).

2007, known as the "Legal Arizona Workers Act," which amended Arizona's aggravated identity theft statute, A.R.S. § 13-2009. The statute now prohibits using the information of another (real or fictitious) person "with the intent to obtain employment." A.R.S. § 13-2009. In 2008, Arizona passed H.B. 2745, titled "Employment of Unauthorized Aliens," which expanded Arizona's general identity theft statute to also reach employment-related identity theft. *See* A.R.S. § 13-2008(A).

These bills were passed, at least in part, in an effort to solve some of Arizona's problems stemming from illegal immigration. The titles of the legislation and the legislative history show an intent on the part of Arizona legislators to prevent unauthorized aliens from coming to and remaining in the state. But these bills were also aimed at curbing the growing and well-documented problem of identity theft in Arizona. Between 2006 and 2008, Arizona had the highest per-capita identity theft rates in the nation, and one third of all identity theft complaints in the state involved employment-related fraud.[2]

Since the laws were amended, Arizona has been aggressively enforcing employment-related identity theft.

---

[2] *See* Fed. Trade Comm'n, *Consumer Fraud and Identity Theft Complaint Data: January - December 2006* at 18, 22 (2007), https://www.ftc.gov/sites/default/files/documents/reports_annual/sentinel-cy-2006/sentinel-cy2006.pdf; Fed. Trade Comm'n, *Consumer Fraud and Identity Theft Complaint Data: January - December 2007* at 18, 22 (2008), https://www.ftc.gov/sites/default/files/documents/reports_annual/sentinel-cy-2007/sentinel-cy2007.pdf; Fed. Trade Comm'n, *Consumer Sentinel Network Data Book for January - December 2008* at 14, 20 (2009), https://www.ftc.gov/sites/default/files/documents/reports_annual/sentinel-cy-2008/sentinel-cy2008.pdf.

Although most of these enforcement actions have been brought against unauthorized aliens, some authorized aliens and U.S. citizens have also been prosecuted. And while many of the people prosecuted under the identity theft laws used a false identity to prove that they are authorized to work in the United States, other defendants used false documents for non-immigration related reasons. For example, Arizona has prosecuted U.S. citizens who used another individual's identity to hide a negative criminal history from a potential employer.

In response to these prosecutions, Puente challenged the amended identity theft laws as unconstitutional for violating the Supremacy Clause and the Equal Protection Clause. In an attempt to repeal the identity theft laws, Puente sued Maricopa County Sheriff Joseph Arpaio, Maricopa County Attorney Bill Montgomery, Maricopa County, and the State of Arizona. On August 8, 2014, Puente moved for a preliminary injunction solely on its facial preemption claim.

Relying on recent Supreme Court precedent, Puente argued that the federal Immigration Reform and Control Act ("IRCA") established a "comprehensive framework" for regulating the employment of unauthorized aliens, and therefore Arizona's employment-related identity theft laws were facially preempted. *See Arizona v. United States*, 132 S. Ct. 2492, 2504 (2012). The District Court agreed that the laws were likely unconstitutional on their face and granted the requested preliminary injunction on conflict and field preemption grounds on January 5, 2015.

Specifically, the district court enjoined Arizona "from enforcing A.R.S. § 13-2009(A)(3) and the portion of A.R.S. § 13-2008(A) that addresses actions committed 'with the

intent to obtain or continue employment.'"**3**    In the same
order, the district court also denied Maricopa County's Rule
12(b)(6) motion to dismiss under *Monell*.  Maricopa County
argued that its lack of control over Sheriff Arpaio shows that
he is not a final policymaker for the County.  The district
court rejected that argument because control is just one factor
in the *Monell* policymaker analysis.  The County moved for
reconsideration and the district court again held that the
Sheriff is a policymaker.

Arizona then filed this timely interlocutory appeal
challenging the district court's preliminary injunction.
Maricopa County also seeks review of the district court's
*Monell* holding.  But there has been no final judgment entered
to date, and the merits of this case remain pending in the
district court.  Importantly, the district court has yet to
consider the merits of Puente's as-applied preemption
challenge.

II

We turn first to the preliminary injunction.  Preliminary
injunctive relief is subject to "limited review" on appeal.  *See
Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d
989, 993–94 (9th Cir. 2011).  A preliminary injunction should
only be set aside if the district court "abused its discretion or
based its decision on an erroneous legal standard or on clearly
erroneous findings of fact."    *United States v. Peninsula
Commc'ns, Inc.*, 287 F.3d 832, 839 (9th Cir. 2002).  The
district court's legal conclusions, such as whether a statute is

---

**3** For the sake of simplicity, we will refer to these challenged provisions
as the "identity theft laws."

preempted, are reviewed de novo. *See In re Korean Air Lines Co.*, 642 F.3d 685, 691 n.3 (9th Cir. 2011).

To obtain a preliminary injunction, the plaintiff must prove "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).[4] Here, the district court found that Puente met its burden on each element of the *Winter* test. We disagree, and hold that Puente is not likely to succeed on, and has not raised serious questions about, the merits of its facial challenge. This conclusion is guided by principles of preemption jurisprudence and the unique burdens imposed on facial challenges.

We first address long-held principles of preemption. Congress of course has the power, under the Supremacy Clause, to preempt state law. *Arizona*, 132 S. Ct. at 2500. Congress may exercise this power expressly or preemption may be implied where the state law is in an area fully occupied by federal regulation or where it conflicts with federal law. *Id.* at 2500–01.

There are two types of conflict preemption. *Id.* at 2501. Conflict preemption occurs where (1) it is impossible to comply with both federal and state law, or (2) where the state law "stands as an obstacle to the accomplishment and

---

[4] Because the Ninth Circuit utilizes a "sliding scale" approach to the *Winter* test, a preliminary injunction is also appropriate when a plaintiff raises "serious questions" as to the merits and "the balance of hardships tips sharply in [plaintiff's] favor." *All. for the Wild Rockies v. Cottrell*, 632 F. 3d 1127, 1135 (9th Cir. 2011) (internal quotations omitted).

execution of the full purposes and objectives of Congress." *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). Field preemption can also take two forms. A law is field preempted where (1) the "regulatory framework is so pervasive" that there is no room for state regulation, or (2) where the "federal interest [is] so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

In both field and conflict preemption cases, the touchstone of our inquiry is congressional intent. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). When analyzing congressional intent "we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (quoting *Rice*, 331 U.S. at 230). Puente argues that this presumption against preemption does not apply here because the identity theft laws do not regulate in an area of historic state power.[5] We reject this argument because, while the identity theft laws certainly have effects in the area of immigration, the text of the laws regulate for the health and safety of the people of Arizona. *See Medtronic Inc. v. Lohr*, 518 U.S. 470, 475 (1996). Therefore, only if Congress's intent to preempt the challenged state statute is "clear and manifest" may we deem the statute preempted. *See Wyeth*, 555 U.S. at 565.

---

[5] The Supreme Court rejected a similar argument in *Wyeth* and applied the presumption against preemption even though the state tort claim at issue in that case touched on an area of historic federal regulation. *See Wyeth*, 555 U.S. at 565 n.3.

We are also guided by the rules that apply to facial challenges. *United States v. Salerno*, 481 U.S. 739, 746 (1987), instructs that to succeed on a facial challenge the plaintiff must show that "no set of circumstances exists under which the Act would be valid." *Salerno*'s applicability in preemption cases is not entirely clear, however. In the First Amendment context, the Supreme Court recognizes a type of facial challenge in which a statute will be invalidated as overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 740 n.7 (1997) (Stevens, J., concurring)). Whether the "substantial number of applications" test applies to facial preemption challenges has not yet been decided by the Supreme Court. Without more direction, we have chosen to continue applying *Salerno*. *United States v. Arizona*, 641 F.3d 339, 345 (9th Cir. 2011), *aff'd in part, rev'd in part and remanded*, 132 S. Ct. 2492 (2012); *Sprint Telephony PCS, L.P. v. County of San Diego*, 543 F.3d 571, 579 n.3 (9th Cir. 2008) (en banc).**[6]** We therefore proceed, keeping in mind the high bar that Puente must overcome under *Salerno* before

---

**[6]** The Supreme Court's majority opinion in *Arizona* does not cite *Salerno*, which has led some courts to conclude *Salerno* does not apply to facial preemption challenges. *See Lozano v. City of Hazleton*, 724 F.3d 297, 313 n.22 (3d Cir. 2013). *Lozano* is an immigration preemption case in which the Third Circuit essentially found a strict application of *Salerno*'s rule incompatible with substantive preemption doctrine. *See id.* The district court in this case employed *Lozano*'s reasoning to hold that *Salerno* should not apply here. *Salerno* remains binding law in the Ninth Circuit, however, and we are not free to ignore it. *Sprint Telephony*, 543 F.3d at 579 n.3 ("In cases involving federal preemption of a local statute, . . . the [*Salerno*] rule applies with full force.").

we may strike down the identity theft laws on this facial challenge.

Applying the preemption and facial challenges framework discussed above, we conclude that the identity theft laws are not facially preempted because they have obvious constitutional applications. This case is made significantly easier by the scope of Arizona's interlocutory appeal and the text of the challenged provisions.

First, the scope of this appeal is limited. Puente moved for a preliminary injunction based solely on its claim that the identity theft laws are facially preempted under the Supremacy Clause. *See* Pls.' Mot. Prelim. Inj., Case No. 2:14-cv-01356-DGC (D. Ariz. Aug. 8, 2014) at 1 ("[T]he challenged provisions constitute a facially invalid state intrusion into an area of exclusive federal control."). Based on this facial challenge, Puente asked the district court to enjoin enforcement of *all applications* of the identity theft laws. *See id.* The district court has yet to address Puente's as-applied challenge, and without a fully developed record we think it inappropriate now to enjoin only certain applications of the identity theft laws.[7] *See* 16 C.J.S. *Constitutional Law*

---

[7] We thank the United States for filing a helpful amicus brief in this matter, but we decline to implement their suggestion to engage in an as-applied analysis. The United States agrees with us that the identity theft laws are constitutional on their face but has asked us to narrow the preliminary injunction to prohibit two applications of the laws: (1) enforcement actions that rely on the Form I-9, and (2) prosecutions of "fraud committed to demonstrate work authorization under federal immigration law." On this facial challenge we decline to enjoin certain applications of the laws. The question of which applications of the laws are preempted is properly left for the district court, which has yet to rule or create a suitable record on Puente's as-applied challenge.

§ 243 (2016) (discussing the importance of factual findings on an as-applied challenge).

Second, we think it significant that the identity theft laws are textually neutral—that is, they apply to unauthorized aliens, authorized aliens, and U.S. citizens alike. Both A.R.S. § 13-2009(A)(3) and A.R.S. § 13-2008(A) sanction "[a]ny person" who commits identity theft to obtain employment. As noted in hypotheticals raised at oral argument, these laws could easily be applied to a sex offender who uses a false identity to get a job at a daycare center. Or the laws could be applied to stop a convicted felon from lying about his criminal history on a job application for a position of trust. In fact, Arizona has prosecuted U.S. citizens for doing just that. The key point is this: one could not tell that the identity theft laws undermine federal immigration policy by looking at the text itself. Only when studying certain applications of the laws do immigration conflicts arise.

Bearing in mind the scope of our review and the statutory language, we now turn to the ultimate question: Are the identity theft laws facially preempted by federal immigration law?

Puente argues that the identity theft laws are in conflict with and are field preempted by IRCA. Puente contends that the identity theft laws are preempted for three reasons: (1) the laws were passed with an intent to regulate immigration; (2) the laws conflict with the federal government's choice of sanctions and exclusive prosecutorial discretion for immigration-related crimes; and (3) the laws conflict with the text of IRCA. We reject all three of these arguments. Although there is tension between the federal scheme and some applications of the identity theft laws, we hold that this

tension is not enough to rise to the level of a "clear and manifest purpose" to preempt the identity theft laws in their entirety. *See Wyeth*, 555 U.S. at 565.

The parties argue vigorously about the import of state legislative history in this case. But these arguments about whether to look to state legislative history miss the mark in two ways. First, Arizona's legislative history tells us nothing about whether Congress intended to preempt state statutes like the identity theft laws. If Congress intended to preempt laws like the one challenged here, it would not matter what Arizona's motives were; the laws would clearly be preempted.

Second, when we do look to state action, we look primarily to a statute's effects to determine if the state encroached on an area Congress intended to reserve.**[8]** *See Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 105 (1992). Said another way, it does not matter if Arizona passed the identity theft laws for a good or bad purpose—what matters is whether the legislature succeeded in carrying out that purpose. *See Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979) ("[W]hen considering the purpose of a challenged statute, [courts are] not bound by '[t]he name, description or characterization given it by the legislature or

---

**[8]** We do not mean to suggest that the state's purpose in passing a statute is not relevant to our preemption analysis, as both this court and the Supreme Court have analyzed purpose in preemption cases. *See N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658 (1995); *Tillison v. City of San Diego*, 406 F.3d 1126, 1129 (9th Cir. 2005). In accordance with Supreme Court precedent, we hold only that state legislative purpose is not dispositive. *See Perez v. Campbell*, 402 U.S. 637, 651–52 (1971) (overruling prior preemption cases that focused on "the purpose rather than the effect of state laws").

the courts of the State,' but will determine for [themselves] the practical impact of the law." (internal quotation omitted)). Thus, the crucial question is whether Congress intended to preempt the identity theft laws given the practical effect of those laws. We think not.

We agree with Puente and the district court that the legislative history of both H.B. 2779 and H.B. 2745 show an intent on the part of Arizona legislators to prevent unauthorized aliens from remaining in the state. But if that was the legislature's only goal, it failed. The legislature also rectified the growing problem of employment-related identity theft. We think Congress would agree that the identity theft laws validly apply to any person who uses another's identity for non-immigration reasons. There is evidence in the record that the laws have been applied to people who use another's identity to hide their criminal record. Congress could not have intended to preempt the state from sanctioning crimes that protect citizens of the state under Arizona's traditional police powers without intruding on federal immigration policy. Thus, we hold that despite the state legislative history, Congress did not intend to preempt state criminal statutes like the identity theft laws.[9]

Next, Puente argues that the identity theft laws are preempted because they conflict with the federal government's enforcement techniques and exclusive

---

[9] On remand, Puente may again produce evidence of the Arizona legislature's intent to regulate immigration when asking the district court to enjoin certain immigration-related applications of the identity theft laws. We hold only that this legislative history is not sufficient to doom the statutes where they can be validly applied in ways that do not implicate immigration.

discretion in the area of immigration.  In making these arguments, Puente relies heavily on the Supreme Court's decision in *Arizona.*  There, the Supreme Court struck down a state law that made it a misdemeanor for "an unauthorized alien to knowingly apply for work, solicit work in a public place or perform work as an employee or independent contractor."  *Arizona*, 132 S. Ct. at 2503.

The *Arizona* Court held that this statute was in conflict with IRCA's "comprehensive framework for combating the employment of illegal aliens." *Id.* at 2504 (internal quotation omitted).  Examining the legislative history of IRCA, the Court pointed to failed proposals to criminalize unauthorized aliens applying for work. *Id.*  Because Congress "made a deliberate choice" to punish employers instead of employees with criminal sanctions under IRCA, Arizona's attempt to create a crime on the employee-side conflicted "with the careful balance struck by Congress" in this area. *Id.* at 2504–05.  Essentially, this conflict in statutory remedies between the federal and state statutes rendered the state statute unconstitutional. *Id.* at 2505.  Puente argues that a similar conflict in techniques is present here because the identity theft laws authorize different (and generally harsher) punishments than authorized under federal law.

Puente also argues that the identity theft laws deprive the United States of necessary prosecutorial discretion over immigration-related crimes. We recently found this argument persuasive in *Valle del Sol*. 732 F.3d at 1027; *see also Arizona Dream Act Coal. v. Brewer*, No. 15-15307, 2016 WL 1358378, at *6 (9th Cir. Apr. 5, 2016) (explaining that the Executive has "very broad discretion" to determine immigration enforcement priorities).  The statute at issue in *Valle del Sol* criminalized harboring and transporting

unauthorized aliens. *Valle del Sol*, 732 F.3d at 1012–13. The harboring statute in *Valle del Sol* "divest[ed] federal authorities of the exclusive power to prosecute these crimes" in line with federal priorities. *Id.* at 1027. Because Arizona had given itself the power to prosecute harboring crimes in state court it could do so "in a manner unaligned with federal immigration enforcement priorities." *Id.* This co-opting of federal discretion over enforcement, coupled with different statutory penalties under state law, led the *Valle del Sol* court to hold Arizona's harboring statute unconstitutional. *Id.* at 1029. Puente argues that like the harboring statute in *Valle del Sol*, the identity theft laws undermine federal discretion to punish immigration-related fraud in line with federal priorities.

While these arguments may be persuasive in the context of Puente's as-applied challenge, we do not find them persuasive in a facial attack. *Arizona*, *Valle del Sol*, and their progeny[10] are easily distinguishable from this case. In those cases, the contested state statutes, on their face, applied only to unauthorized aliens, so every application of the statute had the potential to conflict with federal immigration policy. In contrast, the statutes at issue here make it a crime for "any person" to use a false document to gain employment.

Although some applications of the identity theft laws may come into conflict with IRCA's "comprehensive scheme" or

---

[10] The list of cases analyzing preemption in the immigration context is large and continuously growing. The vast majority of these cases analyze statutes or government actions that apply only to unauthorized aliens. *See, e.g.*, *Arizona Brewer*, No. 15-15307, 2016 WL 1358378, at *10 (explaining why the policy at issue in that case applied to only unauthorized aliens and highlighting other similar cases).

with the federal government's exclusive discretion over immigration-related prosecutions, when the laws are applied to U.S. citizens or lawful permanent residents those concerns are not implicated. Thus, *Arizona*, *Valle del Sol*, and all other preemption cases where the statutory language singles out unauthorized aliens, do not control here. In this case, Arizona exercised its police powers to pass criminal laws that apply equally to unauthorized aliens, authorized aliens, and U.S. citizens. Just because some applications of those laws implicate federal immigration priorities does not mean that the statute as a whole should be struck down.

Finally, Puente makes an argument for preemption based on the text of IRCA. Puente argues that IRCA was drafted to allow only federal government prosecutions of those who use false documents to obtain employment. *See* 8 U.S.C. §§ 1324a(b)(5), (d)(2)(F)–(G). In particular, IRCA provides that any information employees submit to indicate their work status "may not be used" for purposes other than prosecution under specified federal criminal statutes for fraud, perjury, and related conduct. *Id.* § 1324a(b)(5).

Again, we reject this argument because this is a facial challenge and this argument applies only to certain applications of the statute not evident from the statute's text. IRCA's document use limitation is only violated when the identity theft laws are applied in ways that rely on the Form I-9 and attached documents. Just because Arizona could (and has in the past) enforced the identity theft laws in violation of IRCA's document use limitation does not mean the laws should be struck down in their entirety. Arizona retains the power to enforce the laws in ways that do not implicate federal immigration priorities. While the district court may ultimately decide to enjoin identity theft enforcement actions

which rely on I-9 documents, that is not a reason to strike down the laws in their entirety.

In sum, we reject all of Puente's arguments because each one applies to only certain applications of the identity theft laws. Accordingly, Puente has not met its burden of showing a clear and manifest purpose to completely preempt these laws. *See Cal. Div. of Labor Standards Enf't v. Dillingham Const., N.A.*, 519 U.S. 316, 334 (1997) ("We could not hold pre-empted a state law in an area of traditional state regulation based on so tenuous a relation without doing grave violence to our presumption that Congress intended nothing of the sort."). Because Puente has not come forward with a compelling reason why the statute is preempted on its face, we hold that Puente has not raised a serious question going to the merits of its facial challenge.

We stress again that the only question for us to answer on this facial challenge is whether the identity theft laws should be enjoined in all contexts as applied to all parties. On this record, we cannot say that every application is unconstitutional. Thus, we vacate the district court's preliminary injunction and reverse its finding that Puente's facial challenge is likely to succeed on the merits. In doing so, we make no comment on the viability of Puente's as-applied challenge still pending in the district court.

## III

We now turn to Maricopa County's *Monell* appeal. The district court found that Sheriff Arpaio is a policymaker for Maricopa County. Accordingly, the Court held that the County can be liable for the Sheriff's actions under § 1983 based on *Monell v. Department of Social Services*, 436 U.S.

658 (1978).[11]   The County attempts to appeal this ruling, arguing that it has no control over the Sheriff, a state official under Arizona law, so it should not be liable for his actions. In response, Puente argues that this issue is not properly before the court on an interlocutory preliminary injunction appeal.  We agree.

Generally parties must wait for final judgment to appeal a district court's ruling.  *See* 28 U.S.C. § 1291.  But in some circumstances an interlocutory order is immediately appealable by statute—for example, when an interlocutory order grants an injunction.  *Id.* § 1292(a)(1).  In that case, we may exercise pendent jurisdiction over issues outside the injunction only if the issue is "inextricably intertwined" with or "necessary to ensure meaningful review of" the injunction. *Meredith v. Oregon*, 321 F.3d 807, 812–13, *amended*, 326 F.3d 1030 (9th Cir. 2003) (quoting *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 51 (1995)).

Since 1995, the Supreme Court has made clear that invocation of pendent jurisdiction should be extremely limited.  *See Swint*, 514 U.S. at 45–48.  Post-*Swint*, we have been hesitant to find pendent jurisdiction and we interpret the "inextricably intertwined" standard narrowly.  *Meredith*, 321 F.3d at 813–15.  The standard is only satisfied where the issues are "(a) [] so intertwined that we must decide the pendent issue in order to review the claims properly raised on interlocutory appeal, or (b) resolution of the issue properly raised on interlocutory appeal necessarily resolves the

---

[11] In *Monell*, the Supreme Court held that local governments can be liable under § 1983 for constitutional violations resulting from "policy or custom . . . made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  436 U.S. at 694.

pendent issue." *Cunningham v. Gates*, 229 F.3d 1271, 1285 (9th Cir. 2000), *as amended* (Oct. 31, 2000) (internal citations omitted).

Issues are not "inextricably intertwined" when courts apply different legal standards to each issue. *Id*. For example, in *Swint*, the Supreme Court held the Eleventh Circuit erred in exercising pendent jurisdiction over a county's *Monell* liability, in part, because that issue could not be "inextricably intertwined" with the proper subject of the interlocutory appeal—qualified immunity. *Swint*, 514 U.S. at 51. The *Swint* Court suggested that a premature *Monell* appeal could not be bootstrapped onto a proper qualified immunity interlocutory appeal because the issues involved different legal inquiries. *See id.* While "qualified immunity turns on whether [individuals] violated clearly established federal law," a county's liability under *Monell* for the sheriff's actions turned "on the allocation of law enforcement power." *Id.* Even though the issues shared common facts, that was not enough to confer pendent jurisdiction where the issues involved different legal tests. *See id; see also Cunningham*, 229 F.3d at 1285.

Post-*Swint*, we have found pendent jurisdiction in two narrow categories of cases. First, jurisdiction is proper when the pendent issue implicates "the very power the district court used to issue the rulings" under review. *Hendricks v. Bank of Am.*, 408 F.3d 1127, 1134–35 (9th Cir. 2005) (quoting *Meredith*, 321 F.3d at 816). For example, we have exercised jurisdiction over issues of subject matter jurisdiction and personal jurisdiction when attending an interlocutory appeal. *Id.*; *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 998 (9th Cir. 2005). Issues, such as jurisdiction, which question the authority of the court are "necessary to ensure meaningful

review of" injunctions because if the appellate court does not have jurisdiction then it does not have the authority to address *any* issue on appeal. *See Hendricks*, 408 F.3d at 1134.

Second, we have also exercised pendent jurisdiction over a small set of cases where ruling on the merits of the proper interlocutory appeal will necessarily resolve all of the remaining issues presented by the pendent appeal. *See Huskey v. City of San Jose*, 204 F.3d 893, 905 (9th Cir. 2000). To illustrate, in *Huskey* we held that a city's *Monell* appeal in a § 1983 case was "inextricably intertwined" with an individual defendant's appeal from a denial of summary judgment based on qualified immunity. *Id.* at 904–05. There, we reversed the district court's denial of qualified immunity for a city attorney because the plaintiff failed to show a constitutional violation. *Id.* at 902. Since this decision "necessarily foreclose[d] the possibility of the [c]ity's § 1983 liability," we exercised pendent jurisdiction over the city's *Monell* liability and held that the district court erred in denying the city's motion for summary judgment. *Id.* at 904.

We hold that we do not have pendent jurisdiction over Maricopa County's *Monell* liability. A district court's order denying a county's motion to dismiss under *Monell* is generally not immediately appealable. *See Collins v. Jordan*, 110 F.3d 1363, 1366 n.1 (9th Cir. 1996). Thus, we must find that the County's *Monell* liability is "inextricably intertwined" with the preliminary injunction to address the merits of the County's argument. The fact that the parties briefed the *Monell* issue separately is a good indicator that it involves different legal standards from the injunction appeal. Just as the Supreme Court refused to exercise pendent jurisdiction in *Swint* because issues of *Monell* liability and qualified immunity involve different legal tests, we refuse to

combine a *Monell* appeal with an action revolving around application of the *Winter* test and preemption principles. These legal inquiries are analytically distinct.

Nor does the *Monell* issue fall within one of the narrow categories of pendent jurisdiction. The *Monell* issue does not question the district court's authority to impose an injunction. Unlike jurisdictional issues and certain immunities from suit, *Monell* is just a defense to liability. *See Swint*, 514 U.S. at 43. If a county can show that the alleged wrongdoer is not a policymaker that does not mean the court is without power to hear the case, it simply means the court should grant judgment for the county.

Finally, because we reverse the district court's preliminary injunction and remand for further proceedings, this case is also unlike the *Huskey* line of cases where ruling on the interlocutory appeal necessarily resolves the pendent appeal. In *Huskey*, we agreed to hear a city's premature appeal because we had already decided the plaintiff could not succeed on his § 1983 claim and therefore the city could not be liable. This case is inapposite—here we do not comment on the merits of Puente's as-applied preemption challenge or its equal protection challenge, both of which remain pending and should be addressed in the first instance by the district court. Thus, our ruling on the preliminary injunction today does not resolve the County's ultimate liability in this case.

Because this case does not fall within one of the narrow categories where invoking pendent jurisdiction is proper, we dismiss Maricopa County's appeal for lack of jurisdiction.

IV

We hold that Arizona's employment-related identity theft laws are not preempted in all applications.  We reverse the district court's finding that the laws are likely facially preempted.  We also vacate the district court's preliminary injunction and remand with instructions to evaluate the merits of Puente's remaining claims, including the as-applied preemption challenge.  Finally, we dismiss Maricopa County's *Monell* appeal for lack of jurisdiction without prejudice to renew that argument before final judgment is rendered.

Each party shall bear its own costs on appeal.

**REVERSED in part, injunction VACATED, DISMISSED in part, and REMANDED with instructions.**