

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-22-00513-CR, No. 04-22-00514-CR, No. 04-22-00515-CR, No. 04-22-00516-CR,
No. 04-22-00517-CR, No. 04-22-00518-CR, No. 04-22-00519-CR

The **STATE** of Texas v. Jaime Francisco **FLORES, JR.**,
The State of Texas v. Gracie Yvette Lopez, The State of Texas v. Cristal Ann Ramirez,
The State of Texas v. Martin Eli Perez, The State of Texas v. Rodney Ortiz,
The State of Texas v. Enrique Cibrian

From the 229th Judicial District Court, Duval County, Texas
Trial Court Nos. 19-CRD-43, 21-CRD-07, 21-CRD-12, 21-CRD-93,
22-CRD-15, 22-CRD-16, 22-CRD-07
Honorable Baldemar Garza, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:       Irene Rios, Justice
               Beth Watkins, Justice
               Lori I. Valenzuela, Justice

Delivered and Filed: August 30, 2023

REVERSED AND REMANDED

In seven cases, grand jurors of Duval County indicted Jaime Francisco Flores, Jr., Gracie

Yvette Lopez, Cristal Ann Ramirez, Martin Eli Perez, Rodney Ortiz, and Enrique Cibrian

(collectively, Appellees) for third-degree felony smuggling of persons. Appellees moved to quash

their indictments by challenging the statute on several constitutional grounds. After a hearing, the

trial court granted the motions. The State appeals all seven cases, which we consolidated for

briefing and argument. Because we reject Appellees' constitutional claims, we reverse the trial

court's orders and remand the causes for further proceedings.

BACKGROUND

Texas Penal Code section 20.05(a) prohibits the smuggling of persons by three distinct manner and means. Only one—section 20.05(a)(1)(A)—is applicable here.

In 1999, section 20.05(a)(1)(A) was specifically enacted to target "coyotes" who transported noncitizens across the Rio Grande River and through Texas and exposed them to dangerous conditions.[1] In 2011, the statute was broadened to eliminate the exposure-to-danger element and instead make it an enhancement. Acts 1999, 76th Leg., ch. 1014, § 1, eff. Sept. 1, 1999. Amended by Acts 2011, 82nd Leg., ch. 223 (H.B. 260), § 2, eff. Sept. 1, 2011; Acts 2015, 84th Leg., ch. 333 (H.B. 11), § 14, eff. Sept. 1, 2015; Acts 2021, 87th Leg., ch. 572 (S.B. 576), § 2, eff. Sept. 1, 2021 (current version at TEX. PENAL CODE § 20.05).

In 2015, as part of House Bill 11, the legislature added a new basis of liability—(a)(2) harboring a noncitizen—while limiting (a)(1) liability to those who smuggle persons with "the intent to obtain a pecuniary benefit." *Id*. ("A person commits an offense if the person, with the intent to obtain a pecuniary benefit, knowingly . . . uses a motor vehicle . . . to transport an individual with the intent to . . . conceal the individual from a peace officer[.]"). In 2021, the legislature eliminated "the intent to obtain a pecuniary benefit" element from (a)(1), instead making it an enhancement. *Id*. ("A person commits an offense if the person knowingly . . . uses a motor vehicle . . . to transport an individual with the intent to . . . conceal the individual from a peace officer[.]").

Appellees were each arrested after stops for traffic violations. All were transporting suspected noncitizens in their vehicles. All six appellees were charged with violating section

---

[1] Sen. Eliot Shapleigh Testimony before Senate Criminal Justice Committee (May 12, 1999), https://tlcsenate.granicus.com/MediaPlayer.php?view%20id=26&clip%20id=7866 at approx. 11:46 (introduction, amendment, and passage of S.B. 1885).

20.05(a)(1)(A). Flores,[2] Lopez,[3] Ramirez,[4] Perez, and Cibrian were indicted under the 2015 version of the statute. Ortiz[5] was indicted under the 2021 version.

Appellees moved to quash their indictments by challenging the statute on preemption, Fourth Amendment, vagueness, and equal protection grounds. The State responded and the trial court held an evidentiary hearing. Appellees argued, essentially:

- **Preemption**. Enforcement of the statute is preempted by federal law. Regulating human smuggling is an area of exclusive federal control. The federal framework is so pervasive that it has left no room for the states to supplement it ("field preemption"). Parallel state law implicitly conflicts with federal law ("conflict preemption"). Federal and state courts have uniformly struck state smuggling statutes as preempted.

- **Fourth Amendment.** The statute is facially unconstitutional because it "makes a felony out of what the Fourth Amendment protects, which is to avoid the police if you want."

- **Vagueness.** The statute is unconstitutionally vague because it fails to give ordinary people fair notice of the conduct prohibited and it fails to establish guidelines for law enforcement, allowing law enforcement (rather than the legislature) to determine what the law is.

- **Equal protection.** The statute is unconstitutional as applied because it was selectively enforced based on the race, ethnicity, and national origin of the transported individuals.

At the evidentiary hearing on the motions to quash, Appellees clarified that they only challenged section 20.05(a)(1)(A). They relied on its legislative history and noted that throughout the legislative debate, the witnesses "that testified, they only spoke about this migration context. . . . That's how the law is drafted, that's how it's been updated, that's how it's only ever been talked about, one context, transporting migrants, that's it." Appellees presented information about Operation Lone Star, which was specifically launched to "secure the border and combat the smuggling of people and drugs into Texas." They also argued that in Duval County, the statute is

---

[2] The Flores indictment alleged transport of "five (5) undocumented aliens from Mexico."
[3] The Lopez indictment alleged transport of "an undocumented immigrant."
[4] The Ramirez indictment alleged transport of specific named individuals.
[5] The Perez, Cibrian, and Ortiz indictments in the last four cases simply alleged transport of an "individual."

strictly used to prosecute smugglers of individuals from South or Central America or the Caribbean who are Hispanic or Black. And, although the statute is not facially an immigration statute, Appellees argued the only way it is used is as an immigration statute.

Appellees offered and the trial court admitted, for the limited purposes of the hearing,[6] the offense reports from most of the arrests of Appellees. Appellees called a single witness, Sergeant Modesto Saavedra with the Criminal Investigation Division of the Duval County Sheriff's Office. He testified, in part, that section 20.05 "is to deal with transport of, uh, migrants." He explained that in every stop in which he has arrested someone under section 20.05, "the subjects identify themselves as undocumented aliens." In all the cases, he considers it an unwritten element of the section 20.05(a)(1)(A) offense that there is probable cause to believe the persons transported are noncitizens. He stated that circumstance drove the arrests in these cases. Saavedra also testified about the various dangers human smugglers pose to the transported noncitizens such as assault, ransom, rape, murder, abandonment, and trafficking. He noted that all arrests for human smuggling have followed stops for traffic violations.

In response to the preemption challenge, the State noted that the statute focuses on the transporter. The statute does not target those who transport noncitizens—it targets those who transport any passenger with the intent to conceal that passenger from law enforcement. The State also argued it uses the smuggling statute to capture conduct related to the "transporting of men, women, and children throughout our state for purposes such as forced labor, prostitution, and/or other prohibited conduct." The State argued it needs the smuggling statute because it cannot prove trafficking or other crimes because the federal government deports the noncitizens, leaving them unavailable to testify. The State noted that although other states' smuggling statutes have been

---

[6] When they offered exhibits, Appellees did so with the express caveat—"These are being offered solely for the purpose of this hearing and not for any subsequent trial. . . ."

struck down on preemption grounds, those statutes criminalized conduct directly related to an individual's noncitizen status, and the statute at issue here does not.

In response to the remaining claims, the State argued that the Fourth Amendment challenge has no merit because "[e]very stop starts with probable cause." It further argued the statute is not vague because it is clear as to what kind of conduct it criminalizes. In responding to the equal protection argument, the State again focused on the fact that the statute only criminalizes the conduct of the transporter, not the noncitizens. The goal of the statute, in fact, is to protect the individuals being transported from unscrupulous traffickers. Because the noncitizens are often deported quickly, there is no way for the State to use them as witnesses against traffickers. The State uses the smuggling statute, which requires only proof of transport and concealment, because that is how it can protect "not just the citizens of the state, but any individual who is present here in our state."

The trial court granted the motions to quash and set aside the indictments without providing a basis for its ruling. The State appeals. In their brief, Appellees focus solely on their preemption and Fourth Amendment arguments. Because the trial court could have ruled on any of the four constitutional grounds, we address them all.

## ANALYSIS

### *Overall Standard of Review*

In reviewing the dismissal of an indictment, we apply a bifurcated standard. *State v. Krizan-Wilson*, 354 S.W.3d 808, 815 (Tex. Crim. App. 2011). We give "almost total deference to a trial court's findings of facts that are supported by the record, as well as mixed questions of law and fact that rely upon the credibility of a witness." *Id*. "However, the court of appeals applies a de novo standard of review to pure questions of law and mixed questions that do not depend on

credibility determinations." *Id*.; *see also Estrada v. State*, 629 S.W.3d 755, 758 (Tex. App.—San Antonio 2021, no pet.) (reviewing trial court's decision on motion to quash an indictment de novo).

*Preemption*

*Applicable Law and Standard of Review*

"Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect." *Arizona v. United States*, 567 U.S. 387, 398 (2012). "From the existence of two sovereigns follows the possibility that laws can be in conflict or at cross-purposes." *Id*. at 398–99. "The Supremacy Clause provides a clear rule that federal law 'shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.'" *Id*. at 399 (quoting U.S. CONST. art. VI, cl. 2). "Under this principle, Congress has the power to preempt state law." *Id*. "There is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision." *Id*. "State law must also give way to federal law in at least two other circumstances." *Id*. "First, the States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Id*. "The intent to displace state law altogether can be inferred from a framework of regulation 'so pervasive . . . that Congress left no room for the States to supplement it' or where there is a 'federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Id*. (quoting *Rice v. Santa Fe Elevator Corp*., 331 U.S. 218, 230 (1947)). "Second, state laws are preempted when they conflict with federal law." *Arizona*, 567 U.S. at 399. "This includes cases where compliance with both federal and state regulations is a physical impossibility . . . and those instances where the challenged state law stands as an obstacle

to the accomplishment and execution of the full purposes and objectives of Congress." *Id*. (internal quotation marks and citations omitted).

There are two cornerstones of preemption jurisprudence. First, "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal quotation marks omitted). "Second, in all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id*. (internal quotation marks and alterations omitted). The states have traditionally occupied criminal law enforcement; they have not traditionally occupied immigration enforcement. *Kansas v. Garcia*, 140 S. Ct. 791, 806–07 (2020) (noting that while federal law "'makes a single sovereign responsible for maintaining a comprehensive and unified system to keep track of aliens within the Nation's borders,'" criminal law enforcement has been and is "primarily a responsibility of the States") (quoting *Arizona*, 567 U.S. at 401–02).

Specific to preemption in the immigration context, in *DeCanas v. Bica*, 424 U.S. 351 (1976),[7] the United States Supreme Court established three criteria under which state regulation affecting noncitizens is preempted: (1) if it regulates immigration—i.e., if it is "essentially a determination of who should or should not be admitted into the country"; (2) if the clear and manifest purpose of Congress was to completely oust state power in the area of regulation; or (3) it is an obstacle to the accomplishment of the purposes of Congress. *Id*. at 355–63. "Preemption is a question of law reviewed de novo." *Tex. Mut. Ins. Co. v. PHI Air Med., LLC*, 610 S.W.3d 839, 846 (Tex. 2020).

---

[7] *DeCanas* has been superseded on other grounds by the Immigration Reform and Control Act, 8 U.S.C. § 1324a. *See Arizona*, 567 U.S. at 404–05.

*Application*

Appellees moved to quash their indictments on their claim that section 20.05(a)(1)(A) is preempted. Both below and in their briefing to this court, they framed this argument as a facial challenge. Although at oral argument Appellees referenced this claim as an as-applied challenge, the trial court was not squarely asked to address an as-applied preemption claim. Without a fully developed record, precedent advises that it would be procedurally inappropriate for this court to address the Appellees' as-applied preemption claim. The Texas Court of Criminal Appeals has recognized, "[a]n 'as applied' challenge is brought during or after a trial on the merits, for it is only then that the trial judge and reviewing courts have the particular facts and circumstances of the case needed to determine whether the statute or law has been applied in an unconstitutional manner." *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011). Since an as-applied claim "requires a recourse to evidence, it cannot be properly raised by a pretrial motion to quash the charging instrument." *Id*. This court has also acknowledged that a pretrial motion to quash an indictment may be used only for a facial rather than an as-applied challenge to the constitutionality of a statute. *State v. Rosseau*, 398 S.W.3d 769, 779 (Tex. App.—San Antonio 2011), *aff'd*, 396 S.W.3d 550 (Tex. Crim. App. 2013). In the opinion affirming that decision, the Texas Court of Criminal Appeals noted that "the record is undeveloped and thus we do not yet know what evidence the State will present at trial to support its allegations. In a facial challenge to a statute's constitutionality, we examine the statute as it is written, rather than how it is applied in a particular case. Arguments pertaining to an as-applied challenge . . . must be reserved for another day." 396 S.W.3d at 558 n.9 (internal citation omitted).

Here, Appellees introduced evidence at the hearing on the motion to quash with the express caveat that evidence was "offered solely for the purpose of this hearing and not for any subsequent trial." And the State declined to present any evidence. As a result, the record is undeveloped and

we decline to speculate what evidence the State would present at trial to support its allegations. Bound as we are by precedent, we decline to address Appellees' as-applied claims. *See id.*

And when we examine the statute as written, we cannot find it preempted by federal law. Appellees argue the statute is field preempted because the federal government makes a single sovereign responsible for maintaining a comprehensive and unified system to penalize the transportation of noncitizens. *See* 8 U.S.C. § 1324(a)(1)(A)(ii)–(iii). Section 1324(c) authorizes local law enforcement to make arrests for violations of immigration law, but "the federal courts maintain exclusive jurisdiction to prosecute for these crimes and interpret the boundaries of the federal statute." *Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1263–64 (11th Cir. 2012) (citing 8 U.S.C. § 1329). That is, state regulation that specifically targets the smuggling of noncitizens is preempted because the clear and manifest purpose of Congress was to completely oust state power from this area of regulation leaving no room for analogous state crimes. Courts generally agree. *See id.* at 1263–65; *United States v. Alabama*, 691 F.3d 1269, 1286 (11th Cir. 2012); *United States v. South Carolina*, 720 F.3d 518, 531 (4th Cir. 2013); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1024–26 (9th Cir. 2013); *Fuentes-Espinoza v. People*, 408 P.3d 445, 452 (Colo. 2017).

Appellees rely on an order from the Western District of Texas to support their preemption argument. *Cruz v. Abbott*, 177 F. Supp. 3d 992, 998, 1021 (W.D. Tex. 2016), *rev'd on other grounds*, 849 F.3d 594 (5th Cir. 2017).[8] But there, the court analyzed section 20.05(a)(2), not the

---

[8] *Cruz* was brought by individuals and groups that provided legal services, food, clothing, and shelter to noncitizens. The Fifth Circuit reversed the trial court's injunction on standing grounds, concluding section 20.05(a)(2) required a level of covertness the plaintiffs lacked and, since they did not face a credible threat of prosecution, they failed to satisfy the injury-in-fact element for Article III standing. *Cruz v. Abbott*, 849 F.3d 594, 602 (5th Cir. 2017). Because the Western District of Texas's analysis was a preliminary injunction and not a final ruling on the merits, the Fifth Circuit's reversal means the merits of the plaintiffs' claims were never—and will never be—reviewed on a fully developed record. *See id.*

subsection at issue in this case. Because the language of the subsection is different, we find the *Cruz* court's analysis distinguishable.

*Cruz* involved Texas Penal Code section 20.05(a)(2), which provides: "A person commits an offense if the person knowingly: (2) encourages or induces a person to enter or remain in this country in violation of federal law by concealing, harboring, or shielding that person from detection." TEX. PENAL CODE ANN. § 20.05(a)(2). The *Cruz* court granted a preliminary injunction, enjoining enforcement of section 20.05(a)(2) on preemption grounds, because 8 U.S.C. § 1324 occupies the entire field of noncitizen harboring regulation, and Congress left no room for additional state regulation. *Id*. at 1014. But, unlike section 20.05(a)(2), section 20.05(a)(1)(A)— the only statute at issue in this case—is not directly analogous to any federal statute.[9] Section 20.05(a)(1)(A) applies to any "person" who transports any "individual" with the intent to conceal that individual from the police. Although there is overlap between the federal scheme and some applications of section 20.05(a)(1)(A), we do not agree that the clear and manifest purpose of Congress was to bar state liability for the smuggling of persons. *DeCanas*, 424 U.S. at 357–58. Appellees point out that, despite the neutral language of the statute, the clear intent of the legislature and the on-the-ground reality show the statute was designed to combat the smuggling of noncitizens and that is the only way it is actually used. As the Supreme Court has noted, however, "Whatever the purpose or purposes of the state law, pre-emption analysis cannot ignore the effect of the challenged state action on the pre-empted field." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 107 (1992). "The key question is thus at what point the state regulation

---

[9] Appellees construe *Cruz* as having enjoined subsection 20.05(a)(1)(A). While some of the language in that opinion is broad, we read it more narrowly in light of the fact that the plaintiffs in that case challenged only the harboring provision in House Bill 11 and the statutes incorporating it. *See* Br. for Appellees, *Cruz,* 177 F. Supp. 3d 992 (W.D. Tex. 2016) (No. 5:16–CV–067–DAE) (arguing that federal law preempts state harboring provisions and so preempts Texas's HB 11 § 14 (a)(2) and Texas HB 11 §§ 15(a) and 16(a)(17) "to the extent they incorporate § 14(a)(2)").

sufficiently interferes with federal regulation that it should be deemed pre-empted under the Act." *Id*.

Although the legislative history of the human smuggling statute shows an intent on the part of Texas legislators to prevent noncitizens from remaining in the state, the legislature also facilitated the prosecution of criminal traffickers who prey upon vulnerable persons—citizens or not—which, as all parties here agree, is a legitimate realm of state criminal law. Federal law specifically allows for state laws that target traffickers of noncitizens. 22 U.S.C. § 7105(c)(3)(A), (C).[10] Appellees' own witness testified that the State uses the smuggling law to pursue traffickers before they can traffic. We hold that despite the state legislative history and Congress's possible intent to preempt state criminal statutes that directly criminalize the smuggling of noncitizens, Congress did not intend to preempt neutral state smuggling statutes like section 20.05(a)(1)(A).

Nor do we find conflict preemption. Appellees argue the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in part because the basis of liability and statutory ranges of punishment are different than those in the federal statute. The federal statute restricts liability to situations in which the transportation is "in furtherance" of the smuggling, but appellees contend the Texas statute "potentially criminalizes anyone who gives an undocumented person a ride." In addition, the federal statute sets out no mandatory minimum sentence and a five-year or ten-year maximum (depending on whether the

---

[10] *See* 22 U.S.C. § 7105(c)(3)(A) (setting out the authority to permit trafficking victims to stay in the United States to facilitate the investigation and prosecution of traffickers); 22 U.S.C. § 7105(c)(3)(C) (providing federal government will develop "materials to assist State and local law enforcement officials in working with Federal law enforcement to obtain continued presence for victims of a severe form of trafficking in cases investigated or prosecuted at the State or local level" and "distribute the materials" to state and local law enforcement officials); *see also* 8 U.S.C. § 1101(a)(15)(T)(i) (authorizing "T Visas" for trafficking victims who have "complied with any reasonable request for assistance in the Federal, *State, or local investigation or prosecution* of acts of trafficking. . . ." (emphasis added)*, and* 8 U.S.C. § 1101(a)(15)(U) (authorizing "U Visas" for certain crime victims who are "likely to be helpful to. . . Federal, *State, or local law enforcement authorities investigating or prosecuting* [certain] criminal activity. . . .") (emphasis added).

offense was done for the purpose of commercial advantage or private financial gain); the current Texas statute sets out a two-year minimum sentence and a ten-year or twenty-year maximum (depending on whether the offense was committed with the intent to obtain a pecuniary benefit). 8 U.S.C. § 1324(a)(1)(A)(ii), (iii), (B)(ii); TEX. PENAL CODE §§ 20.05(a), (b), (b)(1)(C), 12.23, 12.34. Appellees also argue the state statute usurps power from the federal executive branch, where immigration enforcement decisions exclusively reside, and impermissibly delegates to state and local law enforcement an initial determination of a person's noncitizenship status. *See DeCanas*, 424 U.S. at 355. Appellees point to the evidence showing that arrests for violations of section 20.05(a)(1)(A) hinge on whether the passengers appear to be noncitizens. But state actors must make these same judgments to make arrests for the federal smuggling offense—an action the federal statute expressly permits local law enforcement to do. *See* 8 U.S.C. § 1324(c); *see, e.g.*, *Estrada v. Rhode Island*, 594 F.3d 56, 65 (1st Cir. 2010) (finding Rhode Island State Trooper's detention of motorist for 8 U.S.C. § 1324 violations supported by probable cause); *United States v. Salinas-Calderon*, 728 F.2d 1298, 1302 (10th Cir. 1984) (same, Kansas State Trooper); *United States v. Dimas*, 418 F. Supp. 2d 737, 745 (W.D. Pa. 2005) (same, Pennsylvania State Trooper).

Many appellate courts have found these conflict arguments persuasive in striking down state smuggling statutes. *See Ga. Latino All. for Hum. Rts.*, 691 F.3d at 1265–67; *Alabama*, 691 F.3d at 1285–86; *South Carolina*, 720 F.3d at 530–31; *Valle del Sol Inc.*, 732 F.3d at 1025–28; *Fuentes-Espinoza*, 408 P.3d at 452–54. Likewise, they are arguments the Western District of Texas agreed with when granting the preliminary injunction to enforcement of section 20.05(a)(2). *Cruz*, 177 F. Supp. 3d at 1014–17. That court was persuaded that the subsection involved in that case relocated decision-making from federal actors to state actors, imposed inconsistent and greater penalties than 8 U.S.C. § 1324, and simultaneously widened 8 U.S.C. § 1324 in certain aspects and narrowed it in others. *Id.*

While these arguments may be persuasive in the context of a preemption-as-applied challenge, we do not find them persuasive in a facial attack. *See Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1107 (9th Cir. 2016). The federal and Colorado cases addressed state statutes that, on their face, applied only to the transportation or harboring of noncitizens, "so every application of the statute had the potential to conflict with federal immigration policy." *See id*. In contrast, the Texas statute applies to any "person" who transports an "individual" with the intent to conceal that individual from the police, regardless of the citizenship status of either. *See* TEX. PENAL CODE § 20.05(a)(1)(A). Although some applications of section 20.05(a)(1)(A) may conflict with the federal act's comprehensive scheme or with the federal government's discretion over immigration-related prosecutions, when the laws are applied to citizens, those concerns simply are not implicated. For that reason, we conclude the preemption cases where the statutory language singles out the transportation or harboring of noncitizens do not control here.

Here, Texas exercised its police powers to pass a criminal law that applies equally to those who smuggle citizens and those who smuggle noncitizens. Just because some applications of those laws implicate federal immigration priorities does not mean that the statute conflicts with federal law. *See Kansas*, 140 S. Ct. at 805–06. ("[I]n the vast majority of cases where federal and state laws overlap, allowing the States to prosecute is entirely consistent with federal interests."); *DeCanas*, 424 U.S. at 355 ("[T]he Court has never held that every state enactment which in any way deals with aliens is a regulation of immigration and thus per se pre-empted by this constitutional power, whether latent or exercised.").

In sum, we reject Appellees' arguments because they apply only to certain applications of section 20.05(a)(1)(A). The statute, as written, does not regulate immigration, was not enacted contrary to the clear and manifest purpose of Congress to occupy the field, and does not operate as an obstacle to the accomplishment of the purposes of Congress. *Kansas*, 140 S. Ct. at 806–07;

*DeCanas*, 424 U.S at 355–63. We therefore conclude the trial court erred to the extent it granted the motions to quash based on Appellees' preemption arguments.

### Fourth Amendment

#### Applicable Law and Standard of Review

"A facial challenge is an attack on a statute itself as opposed to a particular application." *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 415 (2015). As a result, to resolve a facial challenge to the constitutionality of a statute, we focus "on the language of the statute itself rather than how it operates in practice." *McGruder v. State*, 483 S.W.3d 880, 883 (Tex. Crim. App. 2016) (internal quotation marks omitted). "Because there is no recognized overbreadth doctrine outside the limited context of the First Amendment, a defendant who challenges the facial constitutionality of a statute beyond that limited First Amendment context has the most difficult challenge to mount successfully, since he must establish that no set of circumstances exists under which the challenged statute would be valid." *Id*. (internal quotation marks and alterations omitted). "[T]o prevail on a facial challenge" the challenger "must establish that the statute always operates unconstitutionally in all possible circumstances." *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013).

The United States Supreme Court set out this no-set-of-circumstances standard in *United States v. Salerno*, 481 U.S. 739, 745 (1987). *See Ex parte Ellis*, 309 S.W.3d 71, 80 n.50 (Tex. Crim. App. 2010). As discussed below, in *Patel*, the Supreme Court further explained that when assessing whether a statute meets the *Salerno* no-set-of-circumstances standard, it "has considered only applications of the statute in which it actually authorizes or prohibits conduct." *Patel*, 576 U.S. at 418.

Whether a statute is facially constitutional is a question of law we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). "When the constitutionality of a statute is attacked, we usually begin with the presumption that the statute is valid and that the legislature has not acted

- 14 -

unreasonably or arbitrarily." *Id*. at 14–15. "The burden normally rests upon the person challenging the statute to establish its unconstitutionality." *Id* at 15.

*Application*

Appellees set out the basic principle that the Fourth Amendment prohibits unreasonable seizures to safeguard the right of the people to be secure in their persons. *Torres v. Madrid*, 141 S. Ct. 989, 993 (2021). An arrest is the quintessential seizure of the person. *Id*. at 996. And Appellees clarify that they do not challenge their traffic stops; they challenge their arrests—indeed, any arrests—under section 20.05(a)(1)(A). Appellees note that, as applied to encounters with law enforcement, an individual has the "constitutional right to walk away and not answer any questions put to him without such action creating reasonable suspicion in the mind of the officer that criminal activity was afoot." *Gurrola v. State*, 877 S.W.2d 300, 303 (Tex. Crim. App. 1994). According to Appellees, given that an innocent individual has a constitutional right to avoid the police, it follows that assisting an innocent person to avoid the police must also be protected by the Fourth Amendment. In that circumstance, the person assisting innocent concealment shares the Fourth Amendment's protection.

Relying on *Patel*, Appellees argue that section 20.05(a)(1)(A) is facially invalid because there are no circumstances in which it operates constitutionally. *Patel*, 576 U.S. at 418. *Patel* involved a Los Angeles municipal code provision which allowed police to inspect hotel registry information on demand. *Id*. at 412. Failure to make the records available was punishable as a criminal misdemeanor and could subject the hotelier to immediate arrest. *Id*. at 421. A group of motel operators argued the statute was facially unconstitutional because it did not provide the operator an opportunity to have a neutral decisionmaker review an officer's demand to search the registry before the operator faced penalties for failing to comply. *Id*. Los Angeles countered that the code provision was not facially unconstitutional because circumstances existed under which it

would be valid, such as in an emergency or when the inspection was permitted by a warrant. The Supreme Court rejected that theory and held that, when applying the *Salerno* no-set-of-circumstances standard to a statute authorizing warrantless searches,

> the proper focus of the constitutional inquiry is searches that the law actually authorizes, not those for which it is irrelevant. If exigency or a warrant justifies an officer's search, the subject of the search must permit it to proceed irrespective of whether it is authorized by statute. Statutes authorizing warrantless searches also do no work where the subject of a search has consented. Accordingly, the constitutional "applications" that petitioner claims prevent facial relief here are irrelevant to our analysis because they do not involve actual applications of the statute.

*Id*. at 418–19. Appellees analogize to *Patel*, asserting that the proper focus of the constitutional inquiry here is the seizures that section 20.05(a)(1)(A) authorizes, not those for which it is irrelevant. If another statute justifies the seizure, then the subject of the seizure must permit it to proceed irrespective of whether it is authorized by section 20.05(a)(1)(A). Accordingly, they argue, the constitutional "applications" that could otherwise prevent facial relief here are irrelevant because they do not involve actual applications of the statute. Appellees argue that all legitimate uses of the statute are covered by federal or state statutes:

- 8 U.S.C. § 1324(a)(1)(A)(ii)–(iii) (prohibiting transporting or concealing a person in this country without authorization);

- Texas Penal Code § 38.05 (criminalizing harboring or concealing another "with intent to hinder the arrest, prosecution, conviction, or punishment of another for an offense"); and

- Texas Penal Code § 20.05(a)(1)(B) (criminalizing using a means of transport with the intent to flee from a person attempting to lawfully arrest or detain the actor).

According to Appellees, the only situation section 20.05(a)(1)(A) separately criminalizes is one in which officers do not otherwise have a constitutionally justifiable reason to investigate, i.e., when the individual has every right to avoid the police. In essence, they argue, the statute does no constitutional work.

We find this analogy inapposite. The State's ability to prosecute under other statutes does not mean its ability to prosecute under this statute is irrelevant to the analysis. "In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978); *see also United States v. Batchelder*, 442 U.S. 114, 123–24 (1979) ("This Court has long recognized that when an act violates more than one criminal statute, the Government may prosecute[] under either so long as it does not discriminate against any class of defendants.").

*Patel* and the authority it relies on address search regimes that permit searches or seizures without a warrant or probable cause. *Patel*, 576 U.S. at 416–17. Section 20.05(a)(1)(A) defines a crime. Under the actus rea requirement, the defendant must have transported another person. And under the mens rea requirement, the defendant must have acted with the specific intent to conceal that person from police. *See United States v. U.S. Gypsum Co.*, 438 U.S. 422, 436 (1978). Absent probable cause to believe both have occurred, no legal seizure is possible. *State v. Espinosa*, 666 S.W.3d 659, 667 (Tex. Crim. App. 2023) ("Probable cause exists under Article 14.01(b) if, when the arrest is made, the facts, circumstances, and reasonably trustworthy information known to the arresting officer, are sufficient for a prudent person to conclude that an individual committed or was committing a criminal offense."). We agree with the Fifth Circuit that *Patel* did not "overrule the *Salerno* standard" or otherwise "lower[] the bar for facial Fourth Amendment challenges." *City of El Cenizo, Tex. v. Texas*, 890 F.3d 164, 187 (5th Cir. 2018) (holding "plaintiffs must establish that every seizure authorized by the ICE-detainer mandate violates the Fourth Amendment").

Given the lack of an "overbreadth" doctrine outside the limited context of the First Amendment, the fact that section 20.05(a)(1)(A) might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid. *Cf. Ex parte Perry*, 483

S.W.3d 884, 913–14 (Tex. Crim. App. 2016) (plurality op.) (excluding conduct covered by other statutes when looking at the legitimate sweep of a statute challenged on *First Amendment* grounds); *Ex parte Lo*, 424 S.W.3d at 20–24 (same).

Further, section 20.05(d) provides, "If conduct constituting an offense under this section also constitutes an offense under another section of this code, the actor may be prosecuted under either section or under both sections." TEX. PENAL CODE § 20.05(d). This indicates the legislature wanted this statute to be available as a tool to punish the proscribed conduct, even if other code sections also prohibit the same conduct. *See*, *e.g.*, *Albernaz v. United States*, 450 U.S. 333, 344 (1981) (noting a legislature can lawfully authorize multiple punishments for the same conduct); *see*, *e.g.*, *Ritz v. State*, 533 S.W.3d 302, 307 (Tex. Crim. App. 2017) (per curiam) (Newell, J., concurring) ("Under the plain text of the [trafficking] statute, the legislature sought to provide as much protection for exploited people and children as possible by allowing prosecution for both human trafficking and the product of that trafficking."); *Moreno v. State*, 413 S.W.3d 119, 131 (Tex. App.—San Antonio 2013, no pet.) (noting legislature clearly expressed intention that a defendant may be convicted of both human trafficking based on forced prostitution under section 20A.02 and compelling prostitution under section 43.05); *Ex parte Pool*, 71 S.W.3d 462, 468 (Tex. App.—Tyler 2002, no pet.) (noting legislature expressly approved multiple punishments for violating protective orders). An individual transporting a person against the will of that person in the trunk of a car, for instance, could be prosecuted as a kidnapper, and, under this statute, as a smuggler.[11]

---

[11] The *Patel* court rejected the City's claims that a statute authorizing warrantless searches may still have independent force if it imposes a penalty for failing to cooperate in a search conducted under a warrant or in an exigency because the "argument gets things backwards." *Patel*, 576 U.S. at 419 n.1. "An otherwise facially unconstitutional statute cannot be saved from invalidation based solely on the existence of a penalty provision that applies when searches are not actually authorized by the statute." *Id*. Because we disagree that this is an otherwise facially unconstitutional statute, we find section 20.05(d) relevant to the analysis.

Given that legitimate applications of the statute exist, we disagree that it is facially unconstitutional. *Salerno*, 481 U.S. at 745; *McGruder*, 483 S.W.3d at 883; *Rosseau*, 396 S.W.3d at 557. The trial court erred to the extent it granted the motions to quash on Appellees' Fourth Amendment claims.

### *Vagueness*[12]

#### *Applicable Law and Standard of Review*

"'The prohibition of vagueness in criminal statutes,' . . . is an 'essential' of due process, required by both 'ordinary notions of fair play and the settled rules of law.'" *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (plurality opinion) (quoting *Johnson v. United States*, 576 U.S. 591, 595–96 (2015)). "The void-for-vagueness doctrine . . . guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes." *Sessions*, 138 S. Ct. at 1212. "And the doctrine guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." *Id*. "Each ground—a lack of fair notice and a lack of standards for law enforcement—provides an independent basis for a facial vagueness challenge." *Ex parte Jarreau*, 623 S.W.3d 468, 472 (Tex. App.—San Antonio 2020, pet. ref'd). "Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973); *Ex parte Barton*, 662 S.W.3d 876, 879 (Tex. Crim. App. 2022). Only when a vagueness challenge involves

---

[12] It appears Appellees have abandoned their vagueness argument on appeal. Because they raised a vagueness argument below, the trial court could have quashed the indictments on vagueness grounds. For that reason, and because Appellees were not required to file an appellate brief, we are required to review the vagueness argument they raised below. *Spielbauer v. State*, 622 S.W.3d 314, 318–19 (Tex. Crim. App. 2021) (an appellee is not required to file a brief and an appellee's failure to file a brief does not relieve the appellate court of its duty to thoroughly review the appellant's claims and any subsidiary issues that might result in upholding the trial court's judgment) (citing TEX. R. APP. P. 47.1).

First Amendment considerations can a criminal law be held facially invalid even though it may not be unconstitutional as applied to the defendant's conduct. *State v. Doyal*, 589 S.W.3d 136, 144 (Tex. Crim. App. 2019). Facial challenges to the constitutionality of a criminal statute raise questions of law, which an appellate court reviews de novo. *Ex parte Lo*, 424 S.W.3d at 14.

*Application*

In their motions to quash, Appellees alleged the statute lacks specificity because it could apply in such situations as "a game of hide and seek, with a monetary prize at stake, involving an off-duty police officer as the searcher," or "a taxi driver picking up a passenger who wants to avoid their friend, a police officer." This case is controlled by *Broadrick*. 413 U.S. at 610–11. Even if the outermost boundaries of the statute "may be imprecise, any such uncertainty has little relevance here, where [the captured] conduct falls squarely within the 'hard core' of the statute's proscriptions[.]" *Id*. at 608.

Appellees also argue that the statute's vagueness allows for arbitrary and discriminatory enforcement because it is only enforced in one context—the transport of noncitizens. But the statute survives the vagueness challenge because "the statutory language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Ex parte Jarreau*, 623 S.W.3d at 475 (internal quotation marks omitted). The police officers charged with enforcing the statute necessarily must exercise some ordinary level of discretion as to what constitutes prohibited conduct, and while the statute is broadly written, it establishes minimal guidelines to govern law enforcement. *See id*. It does not appear law enforcement or appellate courts have "had trouble making sense" of the statute or that the statute is "nearly impossible to apply consistently." *Cf. Johnson*, 576 U.S. at 598–99 ("Here, this Court's repeated attempts and repeated failures to craft a principled and objective standard out of the residual clause confirm its hopeless indeterminacy.").

The trial court erred to the extent it granted the motions to quash on Appellees' vagueness claims.

### *Equal Protection*[13]

*Applicable Law and Standard of Review*

This court recently set out the standards for an equal protection challenge. *Ex parte Aparicio*, ___ S.W.3d ___, No. 04-22-00623-CR, 2023 WL 4095939, at *6–7 (Tex. App.—San Antonio June 21, 2023, pet. filed) (en banc). "Prosecutors retain broad discretion in enforcing both the nation's and a state's criminal laws." *Roise v. State*, 7 S.W.3d 225, 243 (Tex. App.—Austin 1999, pet. ref'd) (citing *Wayte v. United States*, 470 U.S. 598, 608 (1985)). "Thus, if the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether to prosecute and what charge to file generally rests entirely within his or her discretion." *Neal v. State*, 150 S.W.3d 169, 173 (Tex. Crim. App. 2004) (internal quotation marks and citation omitted). Because of this discretion, there is a presumption that a prosecutor has acted within his or her duties and in good faith. *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Nonetheless, prosecutorial discretion is not absolute and is subject to constitutional constraints, including equal protection principles. *See id.*; *Roise*, 7 S.W.3d at 243.

"A defendant may demonstrate that the administration of a criminal law is 'directed so exclusively against a particular class of persons . . . with a mind so unequal and oppressive' that the system of prosecution amounts to 'a practical denial' of equal protection of the law." *Armstrong*, 517 U.S. at 464–65 (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 373 (1886)). Accordingly, a prosecutor's decision to prosecute "may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Armstrong*, 517 U.S. at 464 (quoting *Oyler*

---

[13] Again, although Appellees did not argue equal protection in their responsive brief, for the reasons described in the footnote above, we review the equal protection arguments they raised below.

*v. Boles*, 368 U.S. 448, 456 (1962)). "The requirements for a selective-prosecution claim draw on 'ordinary equal protection standards.'" *Armstrong*, 517 U.S. at 465 (quoting *Wayte*, 470 U.S. at 608).

"Because we presume that a prosecution for the violation of a criminal law is undertaken in good faith and in a nondiscriminatory fashion, the burden falls on the defendant to establish a prima facie case of selective prosecution." *Robles v. State*, 585 S.W.3d 591, 597 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd). The defendant must demonstrate that the prosecutorial policy "'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Armstrong*, 517 U.S. at 465 (quoting *Wayte*, 470 U.S. at 608). To establish a discriminatory effect in a case based on an arbitrary classification, the defendant must show similarly situated individuals of a different classification were not prosecuted for the same conduct. *Id.* To demonstrate that the prosecution was motivated by a discriminatory purpose, the defendant must show that the government's selection of the defendant for prosecution was based on an impermissible consideration, such as race, religion, or desire to prevent the exercise of constitutional rights. *Wayte*, 470 U.S. at 610. Once the defendant establishes a prima facie case of selective prosecution in violation of equal protection rights, the burden shifts to the State to justify the discriminatory treatment. *Ex parte Quintana*, 346 S.W.3d 681, 685 (Tex. App.—El Paso 2009, pet. ref'd).

"A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Armstrong*, 517 U.S. at 463. Because it has no bearing on the determination of actual guilt, "it is an issue for the court to decide, not an issue for the jury." *Galvan v. State*, 988 S.W.2d 291, 295 (Tex. App.—Texarkana 1999, pet. ref'd).

*Application*

Appellees argued below that the Texas human smuggling law violates equal protection because law enforcement and prosecutors selectively apply it, in "incidents involving foreign nationals who are overwhelmingly Hispanic and/or Black," but not where the smuggled persons are citizens, or another race. "In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991). But a litigant may rest a claim to relief on the legal rights or interests of third parties provided "three important criteria are satisfied." *Id*. at 410–11. "The litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests." *Id*. (internal citations omitted, quoting *Singleton v. Wulff*, 428 U.S. 106, 112–16 (1976)).

Appellees argued below that strict scrutiny governed their claims. Even if we assume that Appellees have standing to bring this challenge on behalf of the transported individuals,[14] strict scrutiny does not apply. The Supreme Court has stated, "Undocumented aliens cannot be treated as a suspect class[.]" *Plyler v. Doe*, 457 U.S. 202, 223 (1982); *see Van Staden v. St. Martin*, 664 F.3d 56, 58 (5th Cir. 2011). We agree with the Western District of Texas, which applied a rational-basis review to an equal protection challenge to the 2015 version of section 20.05(a)(2), which directly targets the smuggling of noncitizens. *Cruz*, 177 F. Supp. 3d at 1019 ("[L]egislation such as [section 20.05(a)(2)], 'that does not employ suspect classifications or impinge on fundamental rights must be upheld against an equal protection attack when the legislative means are rationally

---

[14] *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 488 (1999) ("As a general matter—and assuredly in the context of claims such as those put forward in the present case—[a person] unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation.").

related to a legitimate governmental purpose.'") (quoting *Hodel v. Indiana*, 452 U.S. 314, 331 (1981)). Such laws carry a "presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality." *Hodel*, 452 U.S. at 331–32. The *Cruz* court wrote:

> In this case, despite being likely preempted by federal law, [section 20.05(a)(2) and the statutes incorporating it] are rationally related to their stated purpose of "strengthen[ing] the State's border security measures and help[ing to] stem the rising tide of human smuggling and human trafficking in Texas" by targeting "folks that are engaging in smuggling for financial gain." Because of the substantial deference afforded to governmental actions in a rational basis review, the Court finds that these purposes are both rational and legitimate, and that Plaintiffs have failed to state a violation of their equal protection rights. Accordingly, Plaintiffs have failed to state a claim upon which relief may be granted for their equal protection claim.

*Cruz*, 177 F. Supp. 3d at 1019–20 (internal citation omitted). The same can be said for section 20.05(a)(1)(A)—the statute and its enforcement are rationally related to the legislature's stated purpose of "strengthening the State's border security measures and helping stem the rising tide of human smuggling and human trafficking in Texas." The trial court erred to the extent it granted the motions to quash on Appellees' equal protection claims.

## CONCLUSION

We reverse the trial court's orders quashing the indictments, reinstate the original indictments, and remand the cases to the trial court for further proceedings on the original indictments.

Beth Watkins, Justice

PUBLISH

- 24 -